LARRY JAMES OLDSMOBILE–PONTI-AC–GMC TRUCK CO., INC., on behalf of itself and all others similarly situated, Plaintiffs,

v.

GENERAL MOTORS CORPORATION, Defendant.

No. CIV. A. 2:94CV90–D–B.

United States District Court,
N.D. Mississippi,
Delta Division.

Aug. 19, 1997.

Ronald G. Peresich, Biloxi, MS, Michael H. Carpenter, Jeffrey A. Lipps, Columbus, OH, for Plaintiffs.

Jack F. Dunbar, Edward A. Moss, Oxford, MS, Michael B. Hyman, William Henry London, John Hester Ward, Chicago, IL, Paul I. Guest, Jr., Newton Square, PA,, James Clinton Garland, Michael Hayes Freeman, James C. Garland, III, Tulsa, OK, Richard A. Lockridge, Jean Karole Janes, Minneapolis, MN, Mark B. Hutton, Channel P. Townsley, Wichita, KS, Martin J. D'Urso, Philadelphia, PA, for Defendant.

### *MEMORANDUM OPINION*

DAVIDSON, District Judge.

This matter came before the court upon the various motions of the parties including (1) the plaintiffs' motion to void the release and dismissal executed by Larry James individually and in his capacity as dealer/operator of Larry James Oldsmobile, (2) the plaintiffs' motion for sanctions against Jess Dickinson and the law firm of Page, Mannino, Peresich, Dickinson & McDermott, (3) the plaintiffs' motion to add Rebel, Inc. as a class representative and (4) the defendant's motion to dismiss this action without prejudice. After thoroughly reviewing the submitted briefs and conducting a hearing on these matters, the court finds and rules as follows.

## I. MOTION FOR ORDER DECLARING VOID PROVISION COMPELLING RELEASE

### A. Requirement of Court Approval

■ When it initially filed this suit and throughout the certification process, Larry James Oldsmobile–Pontiac–GMC Truck Co., Inc. (hereafter referred to as the "James Dealership"), through the affidavits of its dealer/operator Larry James, assured this court that the action would be vigorously pursued if certified even if the assets of the James Dealership were later sold. It now appears that those sworn assertions ring hollow. The James Dealership and Larry James have agreed to settle with the defendant, thereby releasing their claims, and have executed a stipulation of dismissal with reference to the claims before this federal court. The law is well settled, however, that a class representative wears two hats. He not only represents his personal interests in the litigation, but also the interests of the class. *Dugas v. Trans Union Corp.*, 99 F.3d 724, 726 (5th Cir.1996); *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir.1978), *aff'd sub nom. Deposit Guaranty v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). By voluntarily assuming the role of named plaintiff, the James Dealership accepted a fiduciary duty to act in the best interests of the class, or at the very least, to not act adversely to class interests. *Caston v. Mr. T's Apparel, Inc.*, 157 F.R.D. 31, 33 (S.D.Miss.1994). The defendant and the James Dealership assert that they have not acted adversely to the interests of the unnamed class members because the settlement and dismissal only relate to the individual claims of Larry James and the James Dealership and have no affect on the claims of the class. They further assert that court approval of the release and dismissal is not required for that same reason.

Federal Rule of Civil Procedure 23(e) sets out that

A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

Fed.R.Civ.P. 23(e). Since GM has purportedly settled only the individual claims of Larry James and the James Dealership, it asserts that the class claims and the class action itself remain in full force and thus, Rule 23(e) does not apply to the present situation. Class counsel argue that Rule 23(e) embraces dismissal *or compromise* of a class action. Because the James Dealership was the sole named plaintiff in this class action, class counsel contend that settlement of its claims most certainly *compromises* the class action itself as a headless class action may not be litigated. Fed.R.Civ.P. 23(a); *see, i.e., Satterwhite v. City of Greenville*, 557 F.2d 414, 425 (5th Cir.1977) (Gee, J., dissenting) (describing precertification mooting as a "headless lawsuit with, in effect, no plaintiff" and as "a potential lawsuit searching for a sponsor"), *vacated on reh'g*, 578 F.2d 987 (5th Cir.1978), *cert. granted and judgment vacated by* 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980); *Abron v. Black & Decker (U.S.), Inc.*, 654 F.2d 951, 974 (4th Cir. 1981) (Murnaghan, J., dissenting) (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980)); *see also* Jean Bums, *Standing & Mootness in Class Actions: A Search for Consistency*, 22 U.C. Davis L.Rev. 1239 (1989); Tiburzi, *The Headless Class Action: The Effect of a Named Plaintiff's Pre–Certification Loss of a Personal Stake*, 39 Md.L.Rev. 121 (1979); Note, *Satterwhite v. City of Greenville & Breathing New Life Into the Headless Title VII Class Action*, 32 Stan.L.Rev. 743, 747–63 (1980).

■ Although the Fifth Circuit has not directly addressed the issue of voluntary settlement of a class representative's claims after certification, this court is of the opinion that closely analogous caselaw lends itself to a determination that the proper course is to require court approval. When discussing settlement after denial of certification, the Fifth Circuit has held that named plaintiffs "may not terminate their duties by taking satisfaction; a cease-fire may not be pressed upon them by paying their claims." *Roper,*

578 F.2d at 1110. The *Roper* Court went on to hold that

> [t]here is no reason why an individual plaintiff to whom payment of his claim has been tendered should have less standing in the light of the judicial responsibility to ensure that class representatives adequately represent the interests of the class and *do not settle either their claims or the class action without court approval.*

*Roper,* 578 F.2d at 1110–11 (emphasis added); *see also Caston,* 157 F.R.D. at 34 (noting court approval required "[s]ince the parties seek to settle *Plaintiff's individual claims* and to dismiss the present suit pursuant to such settlement."). The judicial responsibility of this court to ensure that the James Dealership adequately represents the class is even more apparent in this action where certification has previously been granted. *Caston,* 157 F.R.D. at 33 (noting fiduciary obligation of class representative exists even where class *not* officially certified).

The dangers of which this court must be aware and guard against in this situation are twofold. First, the court must question whether the class representative invoked the mechanism of a class action to exact a premium from the defendant in settlement of its own personal claims with prejudice to the class member's rights. Second, the court must inquire whether the remaining class member's interests might be harmed by virtue of their justified reliance upon the named plaintiff's representations that it would adequately represent their interests in the action. *Caston,* 157 F.R.D. at 33. The Fourth Circuit has also addressed this issue.

> The parties, who are settling their individual claims, are not merely members of a putative class; they are the representative parties, without whose presence as plaintiffs the case could not proceed as a class action. Had the appellees been other than the representative parties, there would be no objection to a voluntary settlement of their claim. But, by asserting a representative role on behalf of the alleged class, these appellees voluntarily accepted a fiduciary obligation towards the members of the putative class they thus have undertak-

en to represent. They may not abandon the fiduciary role they assumed at will or by agreement with the appellant, if prejudice to the members of the class they claimed to represent would result or if they have improperly used the class action procedure for their personal aggrandizement.

*Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1305 (4th Cir.1978) (internal footnotes omitted). The Fourth Circuit further opined that the Supreme Court has recognized the potential for abuse in an ungoverned, uncontrolled class setting. *Id.* (quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 549–50, 69 S.Ct. 1221, 1227–28, 93 L.Ed. 1528 (1949) (discussing "strike suits")). The *Shelton* Court continued:

> The abuse identified in *Cohen* can arise at any point after an action has been filed as a class action. It may arise as well at the precertification stage as after certification as a class action. Because of this the District Court should have both the power and the duty, in view of its supervisory power over and its special responsibility in actions brought as class actions, as set forth in 23(d), to see that the representative party does nothing, *whether by way of settlement of his individual claim* or otherwise, in derogation of the fiduciary responsibility he has assumed, which will prejudice unfairly the members of the class he seeks to represent. Apart, then, from the question whether 23(e) provides authority for judicial control over settlements and compromises by representative parties or not, the District Court would appear to have an ample arsenal to checkmate any abuse of the class action procedure, if unreasonable prejudice to absentee class members would result, irrespective of the time when the abuse arises.

*Shelton,* 582 F.2d at 1306 (internal footnotes omitted). (emphasis added). Although the court is aware of authority from outside this circuit which could be interpreted to espouse a view different from that taken by the court this day, *see e.g., Christensen v. Kiewit–Murdock Inv. Corp.,* 815 F.2d 206, 213 (2d Cir.1987), the court respectfully is of the opinion that its ruling is the better of the

choices. Thus, in keeping with the spirit espoused by the *Roper* and *Shelton* Courts, this court shall endeavor to fulfill its role as judicial overseer of this class action. The court now turns to whether the individual releases and the dismissal should be allowed to stand.

### B. Court Approval Granted

■ From the evidence previously submitted to this court and the evidence it received during the hearing, the court is of the opinion that GM's settlement with Larry James individually and the James Dealership along with the stipulation of dismissal should be allowed to stand. The court finds that the named plaintiff did not receive a premium for the settlement of these individual claims because of any leverage provided by the class action. The court further finds, as will be discussed in more detail *infra*, that the remaining class members' rights have not been unfairly prejudiced as a result of the releases and the dismissal. Class counsel also submit that the executed releases should be held void as against public policy because GM entered into settlement talks with a represented party without notifying class counsel. Because the court finds that it is the named plaintiff's desire to settle and release its individual claims in this lawsuit against GM, the court shall discuss this matter further in the context of the plaintiffs' motion for sanctions. The court does not find the documents executed by the named plaintiff and Larry James releasing GM from liability in this action to be void as against public policy. As such, the plaintiffs' Motion for Order Declaring Void as Against Public Policy Provision Compelling Release of Class Claims and Compelling Specific Performance of Remainder of Agreement to Sell Dealership shall be denied.

## II. MOTION TO ADD REBEL, INC. AS CLASS REPRESENTATIVE

### A. James Dealership No Longer Adequate

With the approval of the settlement and release executed by the James Dealership and Larry James individually, the question now facing the court is whether the James Dealership may still fulfill its role as class representative. GM asserts that the named plaintiff's claims have been mooted by the settlement and it is no longer even a member of the class and thus, it may no longer act as class representative. The court's certification order certified a class of present and former dealers who had paid the 1% marketing assessment. The James Dealership and Larry James individually now fall into the latter category of former dealers. Furthermore, the Fifth Circuit has held that "[n]either the satisfaction nor denial of the individual plaintiffs' claims, if effective, necessarily precludes their serving as adequate representatives. We have permitted representatives to serve the class despite adjudications determining that their individual claims are not viable *if* they are members of the class and maintain an adequate nexus with it." *Roper*, 578 F.2d at 1112.

Irrespective of its status as a class member, however, the court must also query whether the 12 n. 4 (10th Cir.1988) (questioning adequacy after named plaintiffs claim mooted). One of the bedrocks for a determination of adequacy is an assurance that the named representative will vigorously pursue the litigation for himself and the class. *Payne v. Travenol Labs., Inc.*, 673 F.2d 798, 811–12 (5th Cir.1982); *In re Catfish Antitrust Litig.*, 826 F.Supp. 1019, 1037 (N.D.Miss.1993); *Hernandez v. Armco Steel Corp.*, 1979 WL 237 (S.D.Tex.) (Citing 3B MOORE'S FEDERAL PRACTICE); *Manual for Complex Litigation* 3rd, § 30.16. The Fifth Circuit has also noted that the district court should question whether the representative has a sufficient stake in the outcome, i.e., whether he has any incentive to zealously participate. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir.), *reh'g denied*, 785 F.2d 1034 (5th Cir.1986).

■ Furthermore, this duty to question the adequacy of class representation is a continuing one. Although the court previously found that the James Dealership was an adequate class representative, that finding is not preclusive to a subsequent different finding when later facts shed further light on the matter. Since any judgment in this class action will be *res judicata* as to the unnamed

class members (who have not opted out), the court must be very careful when determining that their interests are adequately protected. "The Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members." *Matsushita Elec. Indus. v. Epstein,* —— U.S. ——, ——, 116 S.Ct. 873, 888, 134 L.Ed.2d 6 (1996) (citing *Gonzales v. Cassidy,* 474 F.2d 67, 75 (5th Cir.1973) (representative's failure to pursue appeal rendered initially adequate representation inadequate so that judgment was not binding on the class)). Thus, for the protection of both the class and the defendant, the court again addresses the issue of adequacy of the named plaintiff.

■ In the case *sub judice,* the court finds that the James Dealership is no longer an adequate class representative. Larry James, as the Dealership's owner/operator, has acted prejudicially toward the interests of the class by settling his individual claims and those of the Dealership and executing a stipulation of dismissal with GM when the James Dealership was the sole named plaintiff in this class action. Through the actions of Larry James, the James Dealership has forsaken its fiduciary duty and now has no stake in the outcome of this litigation. During the hearing held before this court, the overwhelming evidence indicated that Larry James no longer wished the James Dealership to proceed as class representative and that he personally wanted no further part in this action. Indeed, when questioned concerning his intentions, Mr. James replied that he was "a Mississippi boy and his handshake is his word and he's basically done," referencing his obligation to stand behind the release and stipulation he had executed on behalf of the James Dealership and himself. When pressed further as to whether the James Dealership would continue to serve as class representative, Mr. James replied that it was the court's decision to make but that he was "tired." In light of the evidence before this court, it is abundantly clear that the James Dealership is no longer an adequate class representative.

## B. Replacement Of Named Representative

The *Manual for Complex Litigation (3d)* suggests to this court that "replacement of a class representative may become necessary when, for example, the representative's individual claim has been mooted or otherwise significantly affected by intervening events, such as decertification, or where the representative has engaged in conduct prejudicial to the interests of the class, or is no longer interested in pursuing the litigation." Federal Judicial Center, *Manual for Complex Litigation (3d)* § 30.16 (1995). As noted *supra,* all three of these examples apply to the James Dealership. The *Manual* further provides that the court may permit intervention by a new representative where necessary. *Id.* § 30.16. With the court's previous finding of inadequacy with respect to the James Dealership, replacement of the named plaintiff is a necessity for this action to continue.

■ Such action is within this court's power to order. "It is firmly established that where a class action exists, members of the class may intervene or be substituted as named plaintiffs in order to keep the action alive after the claims of the original named plaintiffs are rendered moot." *Graves v. Walton County Bd. of Educ.,* 686 F.2d 1135, 1138 (5th Cir.1982) (citing various cases). Furthermore, when faced with a similar situation in a subclass setting, the Fifth Circuit has noted that the trial court should consider whether it serves the interests of justice or judicial economy to postpone dismissal of the action for a specified period in which members of that subclass could become plaintiffs by amendment to the Complaint or by intervention and thereby save the subclass action. *Johnson v. American Credit Co. of Ga.,* 581 F.2d 526, 533 n. 13 (5th Cir.1978) (citing *LaReau v. Manson,* 383 F.Supp. 214 (D.Conn.1974)). Substitution of the class representative, or at least the opportunity to do so, appears to be the proper route when the original named plaintiff no longer meets the adequacy requirement. *Mississippi Protection & Advocacy Sys. v. Cotten,* 929 F.2d 1054, 1058 (5th Cir.1991) (affirming district court which permitted substitution of named plaintiff pursuant to Fed.R.Civ.P. 15 because

defendant was not prejudiced by amendment as it did not change the nature of the lawsuit); *Silva v. Vowell*, 621 F.2d 640, 650 (5th Cir.1980) ("Once the [named plaintiffs'] challenge became moot and put the named plaintiffs' standing in question, the plaintiffs and the judge should have realized that intervention by another named plaintiff was appropriate."); *In re Thornburgh*, 869 F.2d 1503, 1508–09 (D.C.Cir.1989) (same); *Vanguard Justice v. Hughes*, 471 F.Supp. 670, 676–77 (D.Md.1979) (left class open for thirty days for class member to intervene as named plaintiff).

■ As a potential solution to this problem, class counsel have moved to add Rebel, Inc. as a class representative. As the court did today with the James Dealership and when it originally named the James Dealership as the class representative, the court must inquire into Rebel, Inc.'s adequacy to fulfill this most important role. Rule 23(a)(3) sets out that the claims or defenses of the representative parties must be typical of the claims or defenses of the class and Rule 23(a)(4) provides that the representative parties must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(3), (a)(4). Rebel, Inc. is a former dealer. However, as noted *supra*, this class action encompasses present and former dealers. As provided by Rule 23, the court must question whether Rebel, Inc.'s claims are typical of the class claims for liability. Fed.R.Civ.P. 23(a)(3). The Fifth Circuit has noted that typicality "focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims." *Jenkins*, 782 F.2d at 472. The court must also determine whether Rebel, Inc.'s interests are in conflict with class interests. *Payne v. Travenol Labs., Inc.*, 673 F.2d 798, 811–12 (5th Cir.1982). The Eleventh Circuit has noted that generally a named plaintiff need not "demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir.1987). Class counsel often have the greater financial incentive to litigate with fervor. Usually, such a situation may be permitted unless the named plaintiff abdi-

cates its role in the litigation beyond furnishing its name for the pleadings. Where a named plaintiff demonstrates so little knowledge of and involvement in the case that the class representative is unable to protect class interests from possibly competing class counsel interests, due process concerns require a finding of inadequacy. *Id.; Jenkins*, 782 F.2d at 472 (noting adequacy requirement focuses on both the class representative and counsel); *Rubenstein v. Collins*, 162 F.R.D. 534, 538–39 (S.D.Tex.1995) ("Class representatives are merely asked to have a general understanding of their position as plaintiffs with respect to the cause of action and the alleged wrongdoing perpetrated against them by the defendants.").

Dennis King, the dealer operator of Rebel, Inc. testified at the hearing and indicated his willingness to assume the role of class representative. However, discovery has not been conducted as to his adequacy and the court is of the opinion that such discovery must be accomplished before the court may confidently rule on the plaintiff's motion to add Rebel, Inc. as the class representative. As such, the plaintiffs' motion to add Rebel, Inc. as the class representative shall be held in abeyance pending reasonable discovery as to Rebel, Inc.'s adequacy. Because of the court's pending resolution of the plaintiffs' motion concerning the addition of Rebel, Inc. as the class representative, the defendant's motion to dismiss without prejudice shall be denied at this time. Should Rebel, Inc. prove inadequate, GM may refile its motion to dismiss without prejudice at that more appropriate time.

## III. MOTION FOR SANCTIONS

■ The court now turns to the plaintiffs' motion for sanctions. Mississippi Rule of Professional Conduct 4.2 provides that

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Miss.R.Prof.Conduct 4.2. This court has the authority to sanction a Mississippi attorney for the ethical breach of any Mississippi Rule of Professional Conduct. *United States v. Brown*, 72 F.3d 25, 28–29 (5th Cir.1995); *R.T.C. v. Bright*, 6 F.3d 336, 341 (5th Cir. 1993) (noting federal court may "hold attorneys accountable to the state code of professional conduct"); *White v. Illinois Central R.R.*, 162 F.R.D. 118, 120 (S.D.Miss.1995) (utilizing violation of 4.2 as basis for sanction). In discussing this rule, a Mississippi Supreme Court justice has noted that "[a]ll accept that a lawyer who approaches a represented third party without going through counsel should be severely sanctioned." *Minnick v. State of Mississippi*, 551 So.2d 77, 101 (Miss.1988) (Robertson, J., dissenting). Although the rule itself forbids such communication absent consent or lawful authority, that same justice opined that "[a]t the very least [the lawyer] must give notice of his intentions." *Id.* While this dissenting justice may find notice to be sufficient compliance with the ethical rule, this court's research unearthed no controlling Mississippi or federal caselaw embracing such an expansion. It is not sufficient for the lawyer to provide notice of his intention to engage in forbidden communications; Rule 4.2 by mandate from its unambiguous terms simply forbids such communication absent consent or authority granted by law.

This court also has the ability through its inherent powers to sanction attorneys appearing before it. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 48, 111 S.Ct. 2123, 2134–35, 115 L.Ed.2d 27 (1991); *Natural Gas Pipeline Co. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir.1996); *Brown*, 72 F.3d at 29; *Dawson v. United States*, 68 F.3d 886, 895 (5th Cir.1995); *American Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 529 (5th Cir.1992). Nevertheless, "in order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith.'" *Chambers*, 501 U.S. at 50, 111 S.Ct. at 2135–36; *Dawson*, 68 F.3d at 895; *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir.1995). Although the imposition of sanctions pursuant to a court's inherent powers is delegated to the court's own discretion, the Fifth Circuit has also noted that courts must demonstrate great restraint and caution when exercising inherent powers. *Natural Gas*, 86 F.3d at 467 ("The threshold for the use of the inherent power sanction is high.").

The sanctions available to this court vary widely depending upon the exercise of its discretion and the unethical or illegal conduct as found by the court. *Carroll v. Jaques Admiralty Law Firm*, 110 F.3d 290, 294 (5th Cir.1997) (finding fine imposed to be least severe sanction available; citing with approval courts imposing fines varying from $700.00 to $50,000.00); *United States v. Greig*, 967 F.2d 1018, 1022–23 (5th Cir.1992) (noting sanctions could include light monetary sanctions or punishment up to the loss of the right to appear as counsel within the district). When imposing sanctions pursuant to its inherent authority, however, the "sanction chosen must employ the least possible power adequate to the end proposed. If there is a reasonable probability that a lesser sanction will have the desired effect, the court must try the less restrictive measure first." *Natural Gas*, 86 F.3d at 467.

For a clearer understanding of the underlying facts pertinent to the plaintiffs' motion for sanctions, the timeline set out below should be helpful.

| | |
|---|---|
| 6/15/94 | The action is filed |
| 3/13/95 | GM files its Notice of Intention to Engage in Business Communications |
| 4/3/95 | Plaintiffs' Motion to Strike GM's Notice |
| 8/28/95 | Magistrate Judge's Order Denying Motion to Strike |
| 10/12/95 | Negotiation continues for sale of James Dealership |
| 10/18/95 | Wilbanks' letter rejecting offer on behalf of James Dealership |
| 11/3/95 | Motion by GM for settlement conference |
| 2/9/96 | ORDER CERTIFYING CLASS |
| 6/14/96 | Negotiations resume for purchase of James Dealership |
| 6/26/96 | Phone conference with parties and Magistrate Judge |

| 7/11/96 | Letter of Intent; $50,000 conveyed by GM to James Dealership |
| 7/15/96 | Class Motion to Void Release and Compel Specific Performance of Sale |
| 8/1/96 | GM's Response to Class Motion to Void |
| 8/11/96 | Class Rebuttal in support of Motion to Void Release |
| 8/14/96 | Phone call between Dickinson, Larry James and Wilbanks |
| 8/14/96 | James' letter to Dickinson confirming phone call |
| 8/19/96 | GM closes deal with release and dismissal |
| 8/26/96 | GM's Motion to dismiss without prejudice |
| 9/16/96 | Class Motion for Sanctions |

Class counsel accuse lawyers for GM of violating Mississippi Rule of Professional Conduct 4.2 by communicating with Larry James concerning the subject matter of this federal litigation without the consent of class counsel or lawful authorization. Not only did defense counsel communicate with a represented party without consent or authorization by law, class counsel assert, but GM's counsel negotiated a release and dismissal of that represented party's claims. GM's attorneys respond that they acted according to a court order when they negotiated the sale of the James Dealership through Larry James' corporate counsel, Charles Wilbanks, instead of class counsel and that they informed class counsel no less than six times that such a transaction could leave the class without a named representative.

On March 13, 1995, GM filed a Notice of Intention to Engage in Business Communications with the James Dealership. Included within the Notice is a statement to the effect that "if an acceptable arrangement with Mr. James is reached as a result of said business communications ..., the proposed class would be left without a named representative." Def.'s Exh. 9; Notice of Intention, unnumbered p. 3. In response, class counsel filed a motion to strike GM's Notice and requested that the court order "General Mo-

tors to make any communications *of the nature described in said document* through plaintiff James' corporate attorneys...." Def.'s Exh. 10; Motion to Strike, p. 3 (emphasis added). In its response in opposition to the plaintiffs' motion to strike, GM again opined that it wished to keep the court advised of its business negotiations with Larry James because of the "possibility that the proposed class would be left without a named representative." Def.'s Exh. 11; Response in Opposition, p. 3. The Magistrate Judge denied the plaintiffs' Motion to Strike on August 28, 1995 noting that "Plaintiff James also asserts that business matters *such as those matters recited in the notice* should be directed to its corporate counsel and not made a part of the record in this suit." Magistrate Judge Orlansky's Order, p. 1. On November 3, 1995, GM filed a Motion for Settlement Conference which set out that

James and GM ... have continued to have discussions regarding the possible sale of the James Dealership, *the resolution of which could affect the continuation of this cause.* The negotiations that have been held to date have been between GM's local counsel and Larry James' regular corporate counsel.

Although the parties have negotiated in good faith, they have not been able to reach an agreement to date. GM is still interested, however, in resolving the matter of a sale of the James dealership and believes that face-to-face settlement discussions, under the guidance and with the assistance of the Court, could prove to be beneficial. In particular, a settlement conference involving the Court, the parties, GM's counsel, and Mr. James' regular corporate counsel, as well as Plaintiff's counsel in this case, could potentially lead to the sale of the James dealership, *as well as the settlement of the remaining issues in this case.*

Def.'s Exh. 12; Motion for Settlement Conference, p. 2. The Magistrate Judge ultimately denied this motion as he found it would be pointless at that time.

■ Defense counsel for GM contend that these documents filed with the court provide ample notice to class counsel that

negotiations regarding the sale of the James Dealership included the release of claims. They further submit that such negotiations were conducted with James' corporate counsel Charles Wilbanks at the insistence of class counsel and with class counsel's fully informed consent. The court does not agree with GM's interpretation of the importance of these alleged "notices" to class counsel. In the first instance, the bulk of the material contained in GM's Notice pertains solely to the sale of the James Dealership, not any proposed settlement or release of claims. In fact, the Notice itself is peculiarly silent with respect to those flag words, instead merely citing the possibility that an acceptable arrangement between Larry James and GM might leave the proposed class without a named representative.

Furthermore, from the court's inspection of the plaintiffs' Motion to Strike, it is strikingly evident that class counsel did not consent to defense counsel discussing with either Charles Wilbanks or Larry James the settlement and release of the named plaintiff's federal claims. The plaintiffs sublimed in their Motion to Strike that "GM has *never* had an obligation to report to the Court its ordinary business communications with any GM dealer.... Plaintiffs have only sought to limit GM's communication *in regard to this case* .... [A]ny communications with regard to possible sale of [the James Dealership] should be funneled through [James'] corporate lawyer." Def.'s Exh. 10, Motion to Strike, pp. 2–3. From this language, it is quite clear to the court that class counsel contemplated a scenario wherein negotiations concerning only the sale of the dealership were handled by Wilbanks. GM apparently also understood this as they requested a settlement conference before Magistrate Judge Orlansky with Larry James' "regular corporate counsel, *as well as Plaintiff's counsel in this case."* Def's Exh. 12, Motion for Settlement Conference, p. 2.

In addition, these communications with the court and with class counsel occurred in 1995, *prior* to the court's order of February 9, 1996

certifying this litigation as a class action. If any doubt existed as to the correct attorney to whom settlement discussions should be directed, the certification order should have dispelled them. This court's February 9th order specifically delineates those attorneys to serve as class counsel; Charles Wilbanks has never been so designated by this court. Class counsel represent the James Dealership and the plaintiff class in this case. Thus, counsel for GM could not communicate with Larry James concerning his claims in this action absent class counsel's presence unless defense counsel obtained class counsel's consent or other lawful authorization. Miss.R.Prof. Conduct 4.2. The court finds that such consent was not granted prior to February 9, 1996. Whether class counsel consented subsequent to that date shall be considered *infra.* The court shall first address GM counsel's proffer that the communications with Larry James were authorized by law.

■ Defense counsel contend that Magistrate Judge Orlansky's August 24, 1995 order authorized GM to communicate with Larry James through Charles Wilbanks. Specifically, GM's attorneys submit that "[c]learly, such Order authorized GM to negotiate the sale of the James Dealership through Mr. Wilbanks." Def.'s Brief, p. 14. To begin with, it is not the communications regarding the sale of the · dealership with which class counsel and this court find fault, but those dealing with settlement of federal claims in the present action. Indeed, class counsel repeatedly encouraged GM to conduct negotiations regarding the sale of the dealership itself through Wilbanks. Furthermore, the Magistrate Judge's order merely denied the plaintiffs' Motion to Strike GM's Notice of Intention to Engage in Business Communications. It certainly cannot be read to authorize GM or its attorneys to enter into discussions with Larry James or Wilbanks concerning the settlement and release of claims asserted in this federal action.[1] As such, this court finds that GM's

---

1. Plaintiff James moves the court to strike a notice filed by defendant on March 13, 1995 stating defendant's intent to discuss with plaintiff its efforts to locate a buyer for plaintiff's dealership.... Plaintiff James asserts that no matter what transpires with regard to ownership of the dealership, the company will continue to represent the class in this suit.

attorneys were not authorized by law to communicate with the named plaintiff concerning the subject matter of this action.

The court next addresses whether class counsel consented to the disputed communications subsequent to the court's certification order. There can be no dispute that class counsel never explicitly granted such consent to defense counsel. In June 1996, negotiations resumed between GM and Larry James, through Charles Wilbanks, for the sale of the James Dealership. Def.'s Exh. 2, Wilbanks Letter, June 14, 1996. In a letter to GM counsel Jess Dickinson on June 21, 1996, Wilbanks set out two options for the sale of the sale of the dealership to GM. Def.'s Exh. 3, Wilbanks Letter, June 21, 1996. The letter noted that "[t]he proposed sale includes the sale of the corporate stock and the withdrawal of the corporation and Larry James as Plaintiff in the Federal class action suit now pending." *Id.* Five days later, attorneys for GM set up a phone conference with class counsel Ed Moss and Magistrate Judge Bogen to discuss the pending settlement and how the federal case should proceed.

Class counsel testified that they first learned of the proposed release and dismissal of the James Dealership's claims on June 26, 1996 at this telephonic-conference. One of GM's attorneys, Jess Dickinson, testified that he was under the impression that Wilbanks had kept class counsel abreast of all the developments occurring with the sale of the dealership.[2] Charles Wilbanks testified, however, that he made it clear to Mr. Dickinson on more than one occasion that he wanted no part of this federal class action and

was not advising Larry James with respect to this litigation. Larry James corroborated Wilbanks' testimony and averred that Wilbanks never advised him with respect to the federal lawsuit.

On July 11, 1996, GM conveyed $50,-000.00 to Larry James along with a Letter of Intent to Enter Into Asset Purchase Agreement. Def's Exh. 13, Letter of Intent. Included within the Letter of Intent was the following provision:

c. James Oldsmobile will release all claims it has under the GM Dealer Sales and Service Agreement as well as its claims asserted in the action pending in the Northern District of Mississippi, Delta Division in the action styled *Larry James Oldsmobile–Pontiac–GMC Truck Co., Inc.,* Case No. 2:94CV90–D–B.

Def.'s Exh. 13, Letter of Intent. Four days subsequent, class counsel filed a motion to void the release and compel specific performance of the remainder of the sales agreement. This document should have reasonably put GM's attorneys on notice that class counsel had not consented to GM's communications with Larry James concerning the settlement and release. It was unreasonable at this time for defense counsel to fail to initiate communications with class counsel concerning the disputed release and dismissal. Instead, counsel for GM simply filed a response to the plaintiffs' motion to void and continued their negotiations. When class counsel filed their reply to GM's response asserting that Larry James wished to continue as class representative,[3] GM attorney Jess Dickinson

Magistrate Judge's Order, Aug. 24, 1995, p. 1. From this language, it is clear the Magistrate Judge contemplated discussions concerning only the sale of the dealership and not any settlement and ultimate ousting of the named plaintiff.

2. The court notes here that Rule 4.2 clearly states that *consent* must be obtained from the represented party's attorney prior to communication; the rule does not provide that *notice* is sufficient.

3. GM asserts that class counsel intentionally misrepresented this material fact to the court in violation of Mississippi Rule of Professional Conduct 3.3(a)(1) (stating that a lawyer shall not knowingly "make a false statement of material fact or law to a tribunal"). Def.'s Brief, p. 8 n. 5.

From the evidence produced at the hearing before this court, it appears that this material assertion was false. Class counsel should have communicated with their client to ascertain his wishes in this matter. However, it is their very failure to communicate as they should have which narrowly excludes them from an ethical rules violation. They had been reasonably put on notice that the named representative wished to withdraw but they had no direct communication with Mr. James to that effect. As such, this court does not find that class counsel *knowingly* misrepresented a material fact to the court. The court does find that class counsel severely neglected their duty to communicate with their

spoke *personally* over the telephone with Larry James to confirm GM's understanding that Mr. James did not wish to participate any further in this litigation.

GM closed the deal with Larry James and the James Dealership on August 19, 1996. The James Dealership and Larry James individually executed a release and a stipulation of dismissal with prejudice with regard to the federal class action. Def.'s Exh. 8, Release, Aug. 19, 1996; Def.'s Exh. 7, Stipulation of Dismissal, Aug. 19, 1996. Attorneys for GM had failed to notify class counsel of this important meeting and no attorney for the plaintiff class attended. The attorneys for GM bulldozed their way through to a settlement and release by the named representative despite Wilbanks' repeated cautions that he was not representing the James Dealership or Larry James with regard to the class action, despite the obvious lack of informed participation on class counsel's behalf, despite the failure to obtain court approval and despite their ethical duties as set out under Rule 4.2.

As a final attempt to justify their behavior, defense counsel contend they broke neither the letter nor the spirit of the rule because they did not communicate directly with a *party*, which the rule prohibits, but with that party's corporate counsel. This argument must also fail. First of all, Wilbanks testified that he informed Mr. Dickinson on more than one occasion that he was not advising Larry James with respect to the subject matter of this litigation. In fact, Mr. Dickinson testified that Wilbanks informed him that he would not sign any document relating to the dismissal of any claims in this class action. And he did not. *See* Def.'s Exh. 8, Release, Aug. 19, 1996; Def's Exh. 7, Stipulation of

Dismissal, Aug. 19, 1996 (no signature line for Larry James' attorney[s] ).

■ Secondly, an attorney may not do through a third person what he may not do himself. A Minnesota district court faced a similar situation in *In re Airline Ticket Comm'n Antitrust Litig.,* 1996 WL 585301 (D.Minn. Aug. 12, 1996). In that class action, defendants' counsel utilized their authorization to conduct discovery to negotiate certain individual settlements with unnamed plaintiffs. *Id.* at * 1. These negotiations were conducted without notice or assent from either class counsel or the court. *Id.* Defense counsel in that case argued that their actions did not violate Minnesota Rule of Professional Conduct 4.2, which is identical to Mississippi's Rule 4.2, because the discussions took place with the individual plaintiffs' own counsel and thus were arms' length negotiations between represented parties. *Id.* District Judge Rosenbaum properly rejected that argument.

> That defendants' counsel conducted their negotiations with represented parties is without significance. Clearly, agencies as large as those involved here have, and regularly use, their own attorneys. These attorneys, however, are not the agencies' appointed counsel in this case.... It is the court-appointed class counsel who represent the plaintiff class members in this case.

*Id.* at *2. This court applauds Judge Rosenbaum's reasoning and shall not grant credence to defense counsel's discharming assertions that they did not violate Rule 4.2 because they did not communicate directly with a *party*.[4]

client, however, and shall consider this factor as it rules upon the plaintiffs' motion for sanctions.

4. Defense counsel cite *Complaint of Korea Shipping Corp.* for the proposition that Rule 4.2 is not violated where such communications take place between other counsel for the represented party, even if the "other" attorney has not entered an appearance in the litigation. 621 F.Supp. 164, 167 (D.C.Alaska 1985). The district court recognized that the thrust behind the relevant ethical rule in question was to even out the "imbalance in knowledge and skill" often found between a lawyer and layman. *Id.* The Alaskan court held that such an imbalance was less likely to exist

where the represented party had other counsel present. However, the facts of that case illustrate that the "other" counsel were quite conversant with the subject matter discussed and had actually been retained by the represented party to render advice in that case, although they were not the party's counsel of record. *Id.* While this court does not wholly embrace the reasoning set out by the Alaskan court, the undersigned need not tangle with that precise question in the case *sub judice.* In contrast with the counsel in *Korea Shipping Corp.,* Mr. Wilbanks testified before this court that he was "in the dark" concerning the class litigation and did not wish to be informed

 The court finds that counsel for GM violated Mississippi Rule of Professional Conduct 4.2 and did so in bad faith. *See United States v. Greig,* 967 F.2d 1018, 1022–23 (5th Cir.1992) (noting violation of Rule 4.2). Mr. Dickinson testified at trial that he did not know what else he could have done to inform and involve class counsel in the discussions relative to the settlement and release of claims executed by the named plaintiff. He could have complied with the express dictates of Rule 4.2 of the Mississippi Rules of Professional Conduct. It seems clear to the court that counsel for GM could have also communicated directly with class counsel on this subject, either by telephone, letter or fax. In any event, as this court has already noted, notice is not the issue. An attorney simply may not communicate with a represented party about the subject matter of the representation absent consent from the party's lawyer or lawful authorization.

The court applauds GM's initial attempts prior to class certification to inform (and involve) the court and class counsel of the direction of their negotiations with Larry James and the James Dealership. The court further considers defense counsel's taking the prerogative in setting up a telephone conference with class counsel and the Magistrate Judge on June 26, 1996. However, GM's failure to obtain consent to communicate with the named plaintiff about the subject matter of this lawsuit from class counsel or this court prior to that phone conference and certainly subsequent to the plaintiffs' filing of the motion to void the release and settlement warrants the imposition of sanctions.

The court is of the opinion that the following sanctions are the least severe with which to punish defense counsel and yet still achieve this court's goal of enforcing the ethical rule against forbidden communications. Mr. Jess Dickinson shall be fined a total of $500.00 and shall pay that amount to the Clerk of the United States District Court for the Northern District of Mississippi. As a sanction against the law firm of Page, Mannino, Peresich, Dickinson & McDermott, Class counsel shall be awarded their reasonable attorneys' fees incurred with respect to:

1) the plaintiffs' motion to void the release and dismissal and otherwise compel specific performance of the sales agreement. This award shall not encompass those fees incurred for the researching, drafting and filing of the plaintiff's rebuttal memorandum in support of this motion.

2) the plaintiffs' motion for sanctions.

3) the defendant's motion to dismiss this action without prejudice.

4) the hearing held before this court on July 31, 1997.

## IV. MOTION TO REDUCE, CLARIFY AND SIMPLIFY ISSUES

Finally, the court takes up the Class Motion to Reduce, Clarify and Simplify Issues. In the motion, class counsel set out their desire to have the court strike certain affirmative defenses asserted by GM and allow the class to voluntarily dismiss the claim asserted under the Automobile Dealers Day in Court Act (15 U.S.C. § 1221 *et seq.*) ("ADDCA"). As such, although the motion is couched in different terms, it is essentially a motion to strike under Federal Civil Procedure Rule 12(f) and the court shall construe it as such. Rule 12(f) provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.P. 12(f). The affirmative defenses which the plaintiff class wish to strike are contained within GM's Answer to the plaintiffs' Amended Complaint. This pleading, to which no responsive pleading is permitted under the federal civil procedure rules, was

as to the action. Thus, the court finds the *Korea Shipping Corp.* opinion inapplicable to these

facts.

 

filed on July 10, 1995. As such, the plaintiff class had twenty (20) days after the service of GM's Answer to the Amended Complaint within which to file this motion. Fed. R.Civ.P. 12(f). The class did not file the motion to strike until May 1, 1996 and has failed to explain why the court should consider such an untimely motion. As such, the motion shall be denied as untimely.[5]

### CONCLUSION

The trial of this matter is currently set to begin on September 8, 1997. Due to these proceedings and the stay of discovery ordered by the Magistrate Judge, that trial date shall be continued until further notice of this court. The plaintiffs' Motion for Order Declaring Void as Against Public Policy Provision Compelling Release of Class Claims and Compelling Specific Performance of Remainder of Agreement to Sell Dealership shall be denied. Following a hearing on this matter, the court finds that the better course of action is to uphold the agreement executed between GM and Larry James, both individually and on behalf of the James Dealership. Because of this decision, and due to Larry James' actions, the court also finds that the James Dealership is no longer an adequate class representative. Thus, a new class representative must be substituted in order for this action to continue. That discovery has been stayed prevents the court from ruling as to the adequacy of the proposed substitute at this time. The plaintiffs' Motion to Add Rebel, Inc. as Class Representative shall thus be held in abeyance pending reasonable discovery as to Rebel, Inc.'s adequacy and GM's Motion to Dismiss Without Prejudice shall be denied. Class counsel's Motion for Sanctions shall be granted as this court finds that GM's attorneys acted in bad faith when they communicated with Larry James absent consent from class counsel or authorization by law. Finally, the class Motion to Reduce, Clarify and Simplify Issues, which this court construes as a motion to strike, shall be denied as untimely.

An order in accordance with this memorandum opinion shall issue this day.

---

**5.** The court is not holding that it will not consider at any time the matters contained within the plaintiffs' motion to reduce, clarify and simplify issues—only that it will not consider these matters at this time styled as a motion to strike. The matters contained therein appear more properly considered within the confines of a motion to dismiss or a motion for summary judgment.