NATURAL GAS PIPELINE COMPANY
OF AMERICA, et al., Plaintiffs,

Natural Gas Pipeline Company of
America, Plaintiff–Appellee,

v.

ENERGY GATHERING, INC.,
et al., Defendants,

John Fox, Movant–Appellant.

No. 94–20408.

United States Court of Appeals,
Fifth Circuit.

July 1, 1996.

Jim Waide, Tupelo, MS, Michael Maness, Houston, TX, for Appellant.

C. Michael Clark, Dennis M. Dylewski, Johnson & Dylewski, Houston, TX, for Appellee.

Before POLITZ, Chief Judge, and HILL * and DeMOSS, Circuit Judges.

POLITZ, Chief Judge:

John Fox, Esq., appeals the assessment of a $460,083 civil contempt sanction. We reverse, concluding that the imposition of this sanction in addition to incarceration was an abuse of discretion under the circumstances of this case.

### Background

This is our second review of this case. The facts of the first action, *Natural Gas Pipeline Co. v. Energy Gathering, Inc.,*[1] reflect that this civil RICO action was brought in 1988 under 18 U.S.C. § 1964 by appellees Texas Industrial Energy Co. and South Gulf Energy, Inc. against a dozen people, including Navarro Crowson, who allegedly had defrauded them in a kickback scheme. The action was consolidated with eight other RICO actions, some of which also named Crowson as a defendant. Prior to the filing of this civil action Crowson had pleaded guilty to several counts of mail fraud done in connection with the alleged scheme. Appellees moved for a default judgment against Crowson. On September 17, 1991 John Fox, Crowson's partner in several business ventures and his long-time legal counsel, appeared in opposition on behalf of Crowson. On September 23, 1991, a default judgment of $1.28 million was entered against Crowson.

Post-judgment discovery requests about Crowson's assets were served on Fox as Crowson's attorney of record. After the requests were ignored and Crowson failed to comply with a court order to respond, he was

---

* Circuit Judge for the Eleventh Circuit, sitting by designation.

1. 2 F.3d 1397 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 882, 127 L.Ed.2d 77 (1994).

held in contempt on June 8, 1992 and incarcerated. At that contempt hearing Crowson was represented by Texas attorney Bobby Mims.

To gain release from the onus of contempt, on June 15, 1992 Crowson signed an "Agreed Order," in which he pledged to produce all of his financial and business records, and to direct third parties to do likewise. After Crowson failed to comply, on July 14, 1992 the court ordered Crowson and his unnamed agents and attorneys to turn over all of his assets to the United States Marshal Service. Rather than comply, Crowson went to Mississippi where he filed for bankruptcy and then entered a mental hospital. The court *a quo* ordered Crowson back to jail. On appellees' motion, the Mississippi bankruptcy was transferred to the court *a quo* and ultimately dismissed.

In the meantime, on June 18, 1992, appellees and a United States Marshal went to Fox's office and served him with a copy of the "Agreed Order." Fox denied having any of Crowson's records. Three weeks later appellees and a deputy marshal returned to Fox's office but he did not turn over all records relating to his business ventures with Crowson. On September 14, 1992 the court ordered Fox to turn over all assets of and documents relating to the Crowson Children's 1990 Trust, of which Fox was the trustee, and all assets in his possession belonging to Crowson. Fox responded by filing pleadings in the bankruptcy proceeding seeking to declare null and void the order regarding the trust assets.

At a contempt hearing in March 1993 the court found that Fox acted as Crowson's agent and ordered him to produce his personal tax returns and every document in his possession relating to Crowson. Fox declined to produce as ordered, contending that

as a Mississippi resident he could not be compelled to do so by a federal district court in Texas. The court held him in civil contempt and ordered his incarceration. A panel of this court stayed that order pending appellate review.

We subsequently held that although the district court generally would not have the inherent power to order discovery from a third party outside the district, it could order Fox to produce Crowson-related records because Fox had entered an appearance in the case as Crowson's attorney and had served as his agent in many respects. We held that the district court had the inherent power to sanction Fox as an errant lawyer practicing before the court. Further, we held that the district court was justified in concluding that without some sanction, Fox could not be relied on to produce all the records of his financial relationship with Crowson. Finding an abuse of discretion, we reversed the incarceration order and that portion of the judgment holding Fox in contempt for failing to turn over his personal tax returns.[2] The remainder of the contempt judgment was remanded for the district court's reconsideration. We suggested that traditional sanctions, such as a monetary penalty that increased each day of Fox's noncompliance, would be sufficient to accomplish the court's purpose.

On remand Fox was deposed and after a hearing ordered to produce all Crowson-related records and all of the deposit slips and checks from his personal checking account for nine years. The appellees had not sought these records. At conclusion of the hearing the court suggested that Fox might want to invoke the fifth amendment privilege against self-incrimination because he might face criminal liability for money laundering.[3] Fox did so the following day.

---

2. We regarded the tax return order as a sanction because it was ordered *sua sponte* and thus could not fall within Texas rules of discovery. *Id.*

3. THE COURT: [A]s late as October of last year, you were taking money [Crowson] stole from somebody and helping him hide it.
FOX: No, sir. I didn't do that.
THE COURT: That's what you were doing. And there's a whole group of people downstairs, or, actually, we've moved them to another building, who have statutes about people who help disclose the origin and nature of funds that are derived from criminal activity. Perhaps you and [Fox's attorney] could look into the money laundering statute and see what additional federal exposure you may have. You may want to take the fifth amendment based on that, I don't know. But you might want to look into that, ... you might

At a subsequent proceeding within days of the remand, counsel for appellees stated that some of the records had not been produced. Without taking any testimony the court ordered Fox back to jail where he remained for several days until conditionally released to find and produce more records. At a subsequent hearing appellees stated that Fox was in substantial compliance, having produced thousands of documents. Many had not been in Fox's possession but had been secured by Fox and his counsel from other sources including Crowson, Crowson's counsel, banks, and brokerage firms.

Appellees filed an application for a "compensatory fine" of $459,725 for losses sustained because of Fox's failure to produce documents when he was served with the Agreed Order. The request included approximately $89,000 representing Crowson's sale of a stock jointly owned by Fox and Crowson, $189,000 representing an annuity cashed by Crowson, $82,000 in attorneys fees and expenses, and $101,000 representing payments by Crowson to Fox which appellees contend were an attempt to conceal Crowson assets and which Fox contends was payment for legal work done over a nine-year period.

In May 1994 the court issued a Judgment of Civil Contempt and Compensatory Fine based on evidence received at one of the November 1993 hearings. The court sanctioned Fox for misconduct and contempt by awarding appellees $460,083 against Fox as restitution "directly occasioned by Fox's acts." The court found that Fox had violated the court's orders by failing to produce records in a timely manner, failing to produce all required records, and failing to produce his attorney billing statements. The court found that Fox's assertion of fifth amendment privilege was a "frivolous excuse for his willful nonproduction of the records" and that Fox had waived the privilege by failing to object timely to the production of records.

## Analysis

 Federal courts have inherent powers necessary to achieve the orderly and expeditious disposition of their dockets.[4] These powers include the authority to punish for contempt in order to maintain obedience to court orders and the authority to impose reasonable and appropriate sanctions on errant lawyers practicing before the court.[5] We review contempt orders and sanctions imposed under a court's inherent powers under the abuse of discretion standard. Because of the potency of inherent powers and the limited control of their exercise, however, they must be used with great restraint and caution.[6] The threshold for the use of the inherent power sanction is high.[7] Such powers may be exercised only if essential to preserve the authority of the court and the sanction chosen must employ " 'the least possible power adequate to the end proposed.' "[8] If there is a reasonable probability that a lesser sanction will have the desired effect, the court must try the less restrictive measure first.[9]

 We hold that in the circumstances of this case, the district court abused its discretion in imposing a $460,083 "compensatory fine" as a civil contempt sanction against Fox in addition to the period of incarceration imposed. Our prior opinion noted the propriety of sanctions against Fox, but vacated as an abuse of discretion the district court's incarceration order and its order that Fox produce his personal tax returns. We suggested traditional sanctions, such as a mone-

want to look at the money laundering statutes. But I want all of the records....

4. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

5. *Natural Gas; Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885 (5th Cir.), *cert. denied*, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968).

6. *Chambers; Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

7. *Reed v. Iowa Marine & Repair Co.*, 16 F.3d 82 (5th Cir.1994).

8. *Anderson v. Dunn*, 19 U.S. (6 Wheat) 204, 231, 5 L.Ed. 242 (1821), *quoted in Spallone v. United States*, 493 U.S. 265, 280, 110 S.Ct. 625, 635, 107 L.Ed.2d 644 (1990).

9. *Spallone.*

tary penalty increasing each day of Fox's noncompliance, as the exercise of the least power necessary to accomplish the court's purpose.

On remand, however, the district court disregarded our caution that "[t]he ultimate touchstone of inherent powers is necessity." [10] Instead, the district court *sua sponte* ordered Fox's reincarceration without explanation as to why incarceration was necessary to accomplish the court's legitimate discovery purpose.

■ Further, despite our finding that the order to produce Fox's personal tax returns was an unwarranted invasion of privacy and unlikely to be useful in producing evidence of Crowson's assets, on remand the district court ordered that Fox produce thousands of checks and deposit slips from his personal checking accounts. This order was an abuse of discretion, causing an even greater intrusion on privacy than the invalidated order to release tax returns, and the order was not based on evidence that production of these documents would likely reveal the existence or location of additional Crowson assets. [11]

We hold that the district court exceeded its inherent powers in imposing a monetary sanction under the facts as presented herein. [12] The court's imposition of a compensatory fine was excessive and unreasonable. We conclude that Fox's incarceration was suffi-

cient punishment in itself to effectuate obedience to the court's legitimate orders and to deter future similar behavior by Fox or other litigants and lawyers. We find the mandated restraint in the exercise of inherent powers lacking in the imposition, in this case, of an additional monetary sanction.

As a final matter, we must address whether the district court may impose sanctions because of Fox's continuing refusal to produce records which he asserts are privileged by the fifth amendment's protection against self-incrimination.

■ In civil as well as in criminal matters, direct imposition of sanctions against one who asserts the privilege against self-incrimination violates the Constitution. [13] The privilege applies to documents as well as to testimony. Upon valid invocation of the privilege, an individual's potentially incriminating papers are protected from production. [14]

■ We hold that Fox's invocation of the privilege was not frivolous; indeed, it was made at the very suggestion of the district judge who pointedly recognized that some of the documents demanded by the discovery orders might furnish incriminating information. We also hold that Fox did not waive the privilege merely by failing to invoke it at an earlier time. Because Fox did not admit at any earlier stage of this proceeding to

---

**10.** *Natural Gas* at 1412.

**11.** The district judge substantially undermined his authority to impose sanctions in this case when he stated at hearings on November 5, 1993 that Fox's punishable actions were not in his role as lawyer but rather as a "bag man for an embezzler," and on November 30, 1993 that Fox had done nothing wrong as a lawyer. In *Natural Gas,* we based our holding that the court had the inherent power to sanction Fox on his role as an errant lawyer practicing before the court, citing for that proposition *Flaksa v. Little River Marine Constr. Co.,* 389 F.2d 885 (5th Cir.), *cert. denied,* 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968). "Although it is unclear whether the inherent power to sanction discovery abuses extends to abuses committed by non-parties, there is no doubt that this power may be applied to attorneys in the case." *Natural Gas* at 1411 (footnote omitted).

**12.** The compensatory fine, as the court termed it, included compensation for appellees' alleged inability, because of Fox's failure to supply records

on June 18 and July 14, 1992, to get access to certain funds of the Crowson Childrens Trust and Fox–Crowson Investments in time to prevent their liquidation by Crowson and apply the funds to satisfy the judgment in this case. Our prior decision in *Natural Gas* found that March 15, 1993, was the date by which Fox could be held responsible for failure to supply records, as that was the day on which the district court "made fully clear to Fox" that he was required to turn over all of Crowson's records responsive to the Agreed Order, which had not named him.

**13.** *Hoover v. Knight,* 678 F.2d 578 (5th Cir.1982).

**14.** *United States v. Davis,* 636 F.2d 1028 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); *Rogers v. Webster,* 776 F.2d 607 (6th Cir.1985) (vacating civil contempt order following refusal, based on privilege against self-incrimination, to comply with post-judgment discovery order).

guilt or to facts which are themselves incriminating, he cannot be deprived of the right to assert the privilege. Therefore, Fox was entitled to assert his fifth amendment privilege in refusing to release attorney billing records, and the imposition of sanctions for Fox's refusal to release these records was error.

Appellant's motion to supplement the record is denied. The judgment appealed is REVERSED.