**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BETTY R. BYRD,

*Plaintiff-Appellant,*

v.

JACK HOPSON; BARBARA HOPSON;
CYNTHIA HOPSON; HOLGER C.
NELSON; KENNETH R. FOX, in his
individual capacity and as Sheriff of
Mitchell County; DONALD STREET, in
his individual capacity and as
Deputy Sheriff of Mitchell County,

*Defendants-Appellees.*

No. 03-1899

BETTY R. BYRD,

*Plaintiff-Appellant,*

v.

JACK HOPSON; BARBARA HOPSON;
CYNTHIA HOPSON; HOLGER C.
NELSON; KENNETH R. FOX, in his
individual capacity and as Sheriff of
Mitchell County; DONALD STREET, in
his individual capacity and as
Deputy Sheriff of Mitchell County,

*Defendants-Appellees.*

No. 03-2073

BETTY R. BYRD,
                    *Plaintiff-Appellant,*

                    v.

JACK HOPSON; BARBARA HOPSON;
CYNTHIA HOPSON; HOLGER C.
NELSON; KENNETH R. FOX, in his
individual capacity and as Sheriff of          No. 03-2346
Mitchell County; DONALD STREET, in
his individual capacity and as
Deputy Sheriff of Mitchell County,
                    *Defendants-Appellees.*

Appeals from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CA-02-212-1)

Argued: June 2, 2004

Decided: August 9, 2004

Before WILKINS, Chief Judge, LUTTIG, Circuit Judge, and
Louise W. FLANAGAN, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

Affirmed in part; reversed in part by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** William Parnell Diggs, William Isaac Diggs, DIGGS,
DIGGS & AXELROD, Myrtle Beach, South Carolina, for Appellant.
Douglas Ross Vreeland, WOMBLE, CARLYLE, SANDRIDGE &
RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Betty R. Byrd and her attorney, William Isaac Diggs, appeal district court orders disqualifying Diggs from representing Byrd, dismissing Byrd's claims alleging that various individuals conspired against her, and imposing sanctions against Byrd and Diggs. We reverse the portion of the sanctions order disbarring Diggs from practice in the Western District of North Carolina; we otherwise affirm.

I.

In March 2001, Byrd brought an action against Cynthia Hopson in North Carolina state court for alienation of affections, alleging that Hopson had an affair with Byrd's husband. After Byrd failed to respond to Hopson's discovery requests, the state court imposed sanctions against Byrd, including dismissing her complaint with prejudice. Following that dismissal, Byrd's original attorney withdrew as counsel, and Diggs represented Byrd in connection with her appeal of the dismissal order. The state court dismissed that appeal for failure to perfect it.

Shortly after the dismissal of her state court action, Byrd, still represented by Diggs, brought this action claiming that Hopson and other individuals in Mitchell County, North Carolina (collectively, "Appellees") participated in a wide-ranging conspiracy against her. This alleged conspiracy arose from Hopson's purported affair with Byrd's husband, which Byrd claimed was part of a scheme by Hopson to acquire Byrd's business and other property. Specifically, Byrd claims that Hopson hired Holger C. Nelson to kill Byrd and that Nelson assaulted her. In addition, Byrd alleges that Kenneth R. Fox, the Sheriff of Mitchell County, refused to investigate the alleged assault and other malicious acts allegedly committed against Byrd by Hopson and her coconspirators. Byrd further suggests that Donald Street, a Mitch-

ell County Deputy Sheriff, also had an affair with Hopson and that Street gave Hopson special treatment in matters relating to Byrd. Byrd also claims that during a hearing in the prior state court action, Street injured Byrd's knee while conducting a weapons search ordered by the presiding judge. Further, Byrd alleges that Cynthia Hopson's parents, Jack and Barbara Hopson, participated in the conspiracy by (1) allowing Cynthia to engage in sexual activity with Byrd's husband at the Hopsons' store, and (2) permitting Cynthia to use their store to sell drugs, the proceeds of which were used to commit various acts in furtherance of the conspiracy.

Based on these allegations, Byrd asserted claims against various Appellees for unreasonable seizure, in violation of 42 U.S.C.A. § 1983 (West 2003); conspiracy to interfere with Byrd's right of access to the courts, in violation of § 1983 and 42 U.S.C.A. § 1985 (West 2003); civil violations of the Racketeer Influenced and Corrupt Organizations (RICO) statutes, *see* 18 U.S.C.A. §§ 1962, 1964 (West 2000); and common law conspiracy, assault and battery, and intentional infliction of emotional distress.

Soon after Byrd commenced this action, Appellees moved to disqualify Diggs from representing Byrd on the ground that Diggs was a material witness to some of the events giving rise to this lawsuit, including the alleged incident in which Street injured Byrd's knee. The district court disqualified Diggs but allowed another lawyer in Diggs' firm to continue representing Byrd. The court subsequently ordered Diggs to establish screening procedures to insulate himself from further involvement in the case.

Each of the Appellees subsequently moved to dismiss or for summary judgment. The district court granted Appellees' motions, finding that Byrd's claims failed on a variety of grounds. Moreover, in response to earlier motions for sanctions, the district court ordered Byrd, Diggs, and the other attorneys representing Byrd to show cause why sanctions should not be imposed against them for filing and maintaining a frivolous lawsuit. Following a hearing, the district court imposed monetary and non-monetary sanctions against Byrd, Diggs, and the other attorneys. Among other sanctions, the district court ordered Byrd and Diggs to pay Appellees' attorneys' fees, and the

court disbarred Diggs from practice in the Western District of North Carolina.

II.

Byrd first contends that the district court erred in disqualifying Diggs and insulating him from further participation in the case. We review decisions concerning disqualification of counsel for abuse of discretion. *See United States v. Howard*, 115 F.3d 1151, 1155 (4th Cir. 1997).

The district court determined that based on Diggs' presence during some of the key events underlying this lawsuit, he would "most certainly be called as a witness" at trial. J.A. 1308. And, the court concluded that Diggs' dual role as advocate and witness presented a conflict of interest that required his disqualification. We find no abuse of discretion in this ruling. *See Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1273 (4th Cir. 1981) ("The roles of witness and advocate are fundamentally inconsistent and when . . . a lawyer ought to testify as a witness for his client, he must as a rule withdraw from advocacy."); *see also United States v. Morris*, 714 F.2d 669, 671 (7th Cir. 1983) (explaining that the general prohibition against counsel acting both as an advocate and as a witness "eliminates the possibility that the attorney will not be a fully objective witness"). Byrd argues that Diggs' testimony would merely be cumulative to that of other witnesses. Based on the record, however, the district court reasonably determined that Diggs had independent knowledge of disputed facts and thus would likely be a necessary witness.

Byrd also challenges the decision by the district court to establish an "ethical wall" to insulate Diggs from further involvement in the case. An ethical wall is a screening device that allows a law firm to represent a litigant even though one or more attorneys in that firm are disqualified from representation due to a conflict of interest. *See Black's Law Dictionary* 573 (7th ed. 1999). Here, the district court ordered that Diggs be screened from further involvement in the case "out of an abundance of caution" in order to "safeguard the integrity of this proceeding." J.A. 1372 (alteration & internal quotation marks omitted); *cf. Howard*, 115 F.3d at 1155 (noting that the right to be

represented by an attorney of one's own choosing is limited by "the obligation of trial courts to safeguard the integrity of the proceedings before them"). Again, we find no abuse of discretion. The district court reasonably determined that the additional step of insulating Diggs, a potential witness, from the attorneys who continued to represent Byrd was necessary to minimize any conflict of interest while avoiding disqualification of Diggs' entire firm, which the district court determined would "work a substantial hardship" on Byrd.[1] J.A. 1372.

We further reject Byrd's argument that Diggs' disqualification and insulation from the case unfairly prejudiced her. The record indicates that the attorneys who replaced Diggs had adequate time to familiarize themselves with the case and to respond to Appellees' dispositive motions. And, although the district court generally prohibited Diggs from discussing the case with the new lawyers representing Byrd, the court did permit "minimal contact necessary to facilitate the transition." *Id.* at 1373. Finally, as the district court recognized, any prejudice that Byrd may have suffered appears to have been the result of Diggs' failure to acknowledge his likely disqualification and bring in substitute counsel earlier in the litigation. *See Alexander v. Watson*, 128 F.2d 627, 631 (4th Cir. 1942) (emphasizing that "[n]o amount of sophistry can gloss over the impropriety of an attorney's accepting employment in a cause in which he knows in advance that he is to testify").

### III.

Byrd also contends that the district court erred in dismissing her claims against Appellees. As noted above, the district court determined that Byrd's claims failed on a variety of grounds. In particular, the court determined that Byrd's state law assault and battery claims were barred by a one-year statute of limitations. *See* N.C. Gen. Stat. § 1-54(3) (amended Oct. 1, 2001). The district court held that Byrd's RICO claims failed because she had not alleged injury to her "business or property," as required for private standing under RICO, *Poto-*

---

[1]We also note that the district court reasonably perceived that Diggs was attempting to continue representing Byrd despite the earlier disqualification order.

*mac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 264 (4th Cir. 2001) (internal quotation marks omitted). The court also found that Byrd was not deprived of access to the courts and that she had produced no evidence that Appellees conspired to deprive her of such access. Similarly, the court found that there was no evidence of any common law conspiracy against Byrd. The court concluded that Byrd's claims based on Street's search of her at a state court hearing failed because Street was acting at the direction of the presiding judge and because any force used by Street was de minimis. Further, the court determined that there was no evidence that Byrd suffered severe emotional distress.

After reviewing the parties' briefs and the applicable law, and having had the benefit of oral argument, we conclude that the district court correctly dismissed Byrd's claims. Accordingly, we affirm the dismissal of those claims.

## IV.

Byrd and Diggs contend that the sanctions entered against them were unwarranted and excessive. A district court decision to impose sanctions is entitled to "substantial deference." *Blue v. United States Dep't of the Army*, 914 F.2d 525, 538 (4th Cir. 1990). This is because "[a] district court is in the best position to review the factual circumstances and render an informed judgment as it is intimately involved with the case, the litigants, and the attorneys on a daily basis." *Id.* (alteration & internal quotation marks omitted). We therefore review all aspects of the sanctions order by the district court for abuse of discretion. *See id.* at 538-39.

In its order to show cause, the district court instructed Byrd and Diggs to submit a statement of their ability to pay monetary sanctions and directed Appellees' attorneys to submit affidavits of fees and costs. Following a hearing, the district court ordered Byrd to pay a total of $228,009.05 in attorneys' fees and costs and to pay a $10,000 fine. The court ordered Diggs to pay $50,000 in attorneys' fees and a $5,000 fine. The court relied on various legal grounds for imposing these sanctions, including Federal Rule of Civil Procedure 11, 28 U.S.C.A. § 1927 (West 1994) (providing that any attorney who "multiplies the proceedings . . . unreasonably and vexatiously" may be

held personally liable for reasonable costs, expenses, and attorneys' fees resulting from that conduct), 42 U.S.C.A. § 1988(b) (West 2003) (permitting recovery of reasonable attorneys' fees by prevailing parties in civil rights cases), and the inherent power of the court. In addition, relying on its inherent authority to discipline attorneys appearing before it, the district court disbarred Diggs from practice in the Western District of North Carolina.

The district court explained in detail its reasons for imposing sanctions. The court found that "the initiation and continuation of this lawsuit were done with the specific intention to harass and pursue a personal vendetta," J.A. 2206, and that Byrd and Diggs pursued the case "with the specific intent of circumventing the state Court's dismissal of their earlier suit," *id.* at 2207 (alterations & internal quotation marks omitted). The district court further emphasized that, based on a reasonable investigation of the facts and law, Diggs should have quickly recognized that Byrd's claims were groundless. *See id.* at 2224 (explaining that "Diggs did not make an objective prefiling investigation but chose instead to rely on the outlandish accusations of a woman with a vendetta"). The court noted that Byrd's version of the events underlying this lawsuit contained numerous inconsistencies and that the witnesses with whom Diggs spoke in investigating the case lacked credibility. *See id.* at 2221, 2224 (recognizing that "Byrd's story is outrageous in tone, nature and demeanor" and that "[i]t is of no moment that Diggs may have . . . consulted the other members of Byrd's menagerie").

Also, the court determined that Byrd knew or should have known that her complaint allegations were baseless, that she misrepresented facts in the pleadings, and that she "was the mastermind behind the frivolous case." *Id.* at 2224 (internal quotation marks omitted). The court went on to discuss numerous examples of Byrd and Diggs asserting claims without any factual or legal basis and making statements during discovery that were "unsubstantiated, frequently irrelevant . . . , and clearly designed to harass, embarrass, and intimidate" Appellees.[2] *Id.* at 2250. Additionally, the court found that Diggs had

---

[2]The district court also noted that one of Byrd's attorneys had submitted a recording of a telephone call in which Nelson allegedly threatened

multiplied the proceedings unreasonably by identifying 34 individuals as having discoverable information when "[a]lmost all of the information allegedly known by these individuals was hearsay, rumor, or speculation." *Id.* at 2261.

We conclude that the district court did not abuse its discretion in determining that sanctions against Byrd and Diggs were warranted. In particular, the record supports the findings by the district court that Byrd engaged in a bad faith effort to harass Appellees through the federal litigation and that Diggs participated in this effort by filing and continuing a multi-claim lawsuit lacking any legal or factual basis. *See Blue*, 914 F.2d at 550 (holding that sanctions were warranted when "the parties and counsel pressed on a massive scale insubstantial claims unsupported by any credible evidence . . . in an effort to harass the defendant"); *id.* at 543 (explaining that "counsel cannot simply rely on a client's patently incredible testimony when any reasonable investigation of the factual bases for the client's claims or examination of materials obtained in discovery would reveal the paucity and implausibility of the evidence").

Further, the district court did not abuse its discretion in assessing monetary sanctions against Byrd and Diggs. In imposing these sanctions, the district court properly considered, *inter alia*, the severity of Byrd's and Diggs' conduct, the minimum amount of sanctions needed to deter future abuses, the reasonableness of the requested fees and costs, and Byrd's and Diggs' ability to pay. *See Robeson Def. Comm. v. Britt (In re Kunstler)*, 914 F.2d 505, 523 (4th Cir. 1990); *see also Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 73 (4th Cir. 1995) (listing factors for determining reasonable attorneys' fees under § 1988(b)). And, we perceive no abuse of discretion in the findings by the district court concerning the appropriate amount of monetary sanctions.

---

to kill Byrd. The court believed that the call was staged by Byrd and Anthony Raburn, an associate of Byrd's. Although recognizing that fabrication of evidence would warrant serious sanctions, the court declined to impose sanctions based on the recording because the court could not conclusively determine that it was fabricated. Instead, the court turned the recording over to the United States Attorney for investigation.

We reach a different conclusion, however, with respect to Diggs' disbarment. It is well-established that "[a] court has the inherent authority to disbar or suspend lawyers from practice . . . derived from the lawyer's role as an officer of the court." *In re Evans*, 801 F.2d 703, 706 (4th Cir. 1986); *see In re Snyder*, 472 U.S. 634, 643 (1985). Although we "owe substantial deference to the district court" in attorney disbarment decisions, *Evans*, 801 F.2d at 706, the inherent power to disbar an attorney must be "exercised with great caution," *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 531 (1824). In particular, before imposing this extreme sanction, a court must determine that disbarment is necessary to achieve the purposes of attorney sanctions—most notably, protecting the public and deterring future abusive conduct. *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993) (emphasizing that inherent power to impose sanctions "must be exercised with the greatest restraint and caution, and then only to the extent necessary"); *Byrne v. Nezhat*, 261 F.3d 1075, 1132 n.112 (11th Cir. 2001) (explaining that in selecting appropriate sanctions for attorney misconduct, courts should "deploy[ ] the least extreme sanction reasonably calculated to achieve the appropriate punitive and deterrent purposes" (internal quotation marks omitted)); *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467-68 (5th Cir. 1996) (holding that, in imposing attorney sanctions pursuant to inherent powers, courts must use the least severe sanction necessary to achieve the desired goals; observing that "the ultimate touchstone of inherent powers is necessity" (alteration & internal quotation marks omitted)); *Restatement (Third) of the Law Governing Lawyers* ch. 1, tit. C, introductory note (2000) ("The sanctions imposed in lawyer-discipline proceedings seek to protect clients and the public, to deter wrongful conduct by other lawyers, and specifically to deter future wrongful conduct seemingly threatened by the lawyer found to have violated mandatory rules.").

Based on the repeated instances of misconduct by Diggs, the district court apparently determined that the severe sanction of disbarment was necessary to deter Diggs from future abusive conduct. Although the response by the district court to Diggs' misconduct was "understandably stern," *Shaffer Equip.*, 11 F.3d at 463, we conclude that disbarment was not warranted. As noted above, the district court imposed $55,000 in monetary sanctions against Diggs personally. Based on the record, we are convinced that these substantial monetary

sanctions are sufficient to deter Diggs from future abusive conduct and therefore to protect the public from such conduct. Thus, when the district court took the additional step of disbarring Diggs, it exceeded its discretion by imposing a greater sanction than was necessary to achieve these goals. *See id.* at 453 (vacating a sanction of dismissal for attorney misconduct because that sanction was "not required to punish and deter effectively the misconduct in question"); *cf. Natural Gas Pipeline Co.*, 86 F.3d at 468 (finding that the temporary incarceration of an attorney for his refusal to produce records was sufficient to ensure compliance with court orders and to deter future misconduct, and holding that the district court abused its discretion by imposing an additional monetary sanction). Accordingly, we reverse the portion of the sanctions order disbarring Diggs.[3]

V.

For the reasons set forth above, we affirm the district court orders disqualifying Diggs, insulating him from further involvement in the case, and dismissing Byrd's claims against Appellees. We also affirm the imposition of monetary sanctions against Byrd and Diggs, but we reverse the portion of the sanctions order disbarring Diggs.

*AFFIRMED IN PART; REVERSED IN PART*

---

[3]Because we conclude that disbarment was an excessive sanction, we do not consider whether the district court afforded Diggs adequate procedural due process in connection with the disbarment decision. *See In re Ruffalo*, 390 U.S. 544, 550 (1968) (holding that prior to disbarment, an attorney is entitled to notice and an opportunity to be heard). To the extent Byrd and Diggs argue that they were deprived of due process in connection with the imposition of monetary sanctions, we reject those arguments.