# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2010

No. 10-30040

Lyle W. Cayce
Clerk

UNION PUMP CO., formerly known as David Brown Union Pumps Co.,

Plaintiff – Appellant

v.

CENTRIFUGAL TECHNOLOGY INCORPORATED; DANIEL CLEVELAND;
CHARLES GOODRICH,

Defendants – Appellees

consolidated with
No. 10-30072

UNION PUMP CO., formerly known as David Brown Union Pumps Co.,

Plaintiff – Appellee

v.

CENTRIFUGAL TECHNOLOGY INCORPORATED; DANIEL CLEVELAND;
CHARLES GOODRICH,

Defendants – Appellants

Appeal from the United States District Court
for the Western District of Louisiana
No. 5:05-CV-0287

No. 10-30040
No. 10-30072

Before KING, GARWOOD, and DAVIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff, Union Pump Company, sued three of its former employees after the former employees formed a competing business. Union Pump alleged that the defendants misappropriated its trade secrets and engaged in unfair competition because the defendants were using Union Pump's proprietary drawings to operate their competing business. Union Pump also alleged that the defendants spoliated evidence by deleting and destroying electronically stored information. Following a two-week trial, the jury returned a verdict in Union Pump's favor. Union Pump appeals the district court's refusal to award attorney's fees as a sanction for the defendants' spoliation of evidence. The defendants also appeal, arguing that they are entitled to a new trial because the district court made several evidentiary errors and there was insufficient evidence to sustain the amount of the damages award. For the following reasons, we affirm the district court's judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Union Pump Company, is in the business of designing, manufacturing, and servicing industrial pumps. In 1995, Union Pump's predecessor, David Brown Pumps, Inc.,[1] purchased American Pump Company

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The plaintiff in this case has gone through several name changes during the relevant time period. David Brown Pumps, Inc. was an American subsidiary of a British company. Its name was later changed to David Brown Union Pumps Company after it acquired Union Pump, headquartered in Battle Creek, Michigan. Thereafter, Textron Innovations, Inc., originally a plaintiff in this suit, acquired David Brown Union Pumps Company. Following

No. 10-30040
No. 10-30072

located in Shreveport, Louisiana.  All of American Pump's intellectual property was included in the sale, including the design and fabrication drawings for all of the American Pump pumps and component parts.   At the time of the sale, American Pump was partially owned by two of the individual defendants, Daniel Cleveland and Jerry Don Elmore.  The third individual defendant, Charles Goodrich, was an employee of American Pump.  Following the sale, Union Pump continued to manufacture and service the American Pump line of pumps, and the three individual defendants continued to work in the Shreveport plant.

On December 2, 2002, Union Pump announced that it would close the Shreveport plant and relocate plant functions to various other locations in the United States.  Despite the closure of the Shreveport plant, Union Pump intended to continue servicing pumps in the American Pump line.  The employees responsible for winding down operations at the Shreveport plant, including Goodrich, Cleveland, and Elmore, were instructed to send all of the American Pump design and fabrication drawings to another location.

In April 2003, immediately following the closure, Goodrich, Cleveland, and Elmore formed a competing company, Centrifugal Technology, Inc. (CTI). In September 2003, Union Pump was unable to locate a drawing for a heat exchanger component part for a pump in the American Pump line.  A Union Pump employee contacted Cleveland, asking whether Cleveland still possessed any materials belonging to Union Pump.  According to Cleveland, he found the

---

yet another merger, the company was rebranded as Union Pump Company.  Union Pump presented evidence at trial that the intellectual property at issue was properly transferred during all of the mergers and name changes.  For clarity, we refer to the plaintiff simply as Union Pump, regardless of its actual name at the time of the event discussed.

drawing on a computer disk in a box of miscellaneous items.   Cleveland forwarded the drawing to the Union Pump employee.

Thereafter, Union Pump discovered that it was missing a large number of design and fabrication drawings for the American Pump line.   Based on Cleveland's possession of at least one drawing, and the defendants' formation of a competing business, Union Pump determined that the defendants were likely in possession of more American Pump drawings.   Union Pump filed this action in September 2004, alleging that Cleveland, Goodrich, and Elmore, along with CTI, had tortiously converted Union Pump's intellectual property, engaged in unfair trade practices, and violated the Louisiana Uniform Trade Secrets Act (LUTSA), La. Rev. Stat. §§ 51:1431–39.   Union Pump sought damages for the unauthorized use of its drawings, return of the drawings themselves, and an injunction preventing CTI from using the drawings in the future.

Union Pump immediately sought discovery of all electronically stored information in the defendants' possession that might relate to the litigation.   The district court appointed a special master to oversee discovery in the case and appointed a computer expert to analyze the defendants' computers.   Each of the parties also retained its own computer expert.   In addition, the district court entered a protective order in December 2004 that prohibited the defendants from "taking any action to destroy, erase, eradicate, secret, conceal, dispose of or otherwise render unavailable for inspection by plaintiffs, any and all design drawings, AutoCAD drawings, schematics, computer data, [or] computer files." The court-appointed computer expert took forensic images of the defendants' computer hard drives in April and May of 2005 and copies of those images were given to the computer experts retained by the parties.

No. 10-30040
No. 10-30072

After inspecting the defendants' hard drives, Union Pump learned that the defendants had spoliated much of the evidence relevant to the litigation by deleting or destroying the electronic information contained on the hard drives. Specifically, Union Pump's computer expert, Andrew Rosen, discovered that most of the data on the hard drives of at least three of the defendants' computers had been deleted using memory wiping software designed specifically for that purpose. Rosen found that the software was used in the most invasive "deep clean" mode, and that it was used between March and May 2005, after the district court had entered the protective order and before the court-appointed expert was able to access the hard drives. Goodrich had used the disk-wiping software on his hard drive just days before the hard drive was to be imaged by the court-appointed expert in May 2004. Rosen also found evidence that Goodrich had performed internet searches on computer forensics and disk-wiping. In addition, the court-appointed expert discovered that the tapes designed to back up CTI's hard drives were blank. The tapes had supposedly been rotated every night and on a bi-weekly basis, but the only way the backup tapes could be blank is if they were erased or had never been used.

Union Pump also learned that the defendants had disposed of several relevant items. During his deposition, Cleveland admitted that he had been in possession of at least three computer disks containing American Pump drawings. Cleveland admitted to discussing the disks with Goodrich after Union Pump had contacted him for the drawings, and that he and Goodrich had decided to destroy the disks instead of returning them to Union Pump. CTI had also disposed of a computer just prior to the filing of the complaint.

No. 10-30040
No. 10-30072

Upon learning this information, Union Pump amended its complaint to add a cause of action for spoliation of evidence. Union Pump also filed a series of motions related to the spoliation. It first filed a motion for sanctions, asking that the district court sanction the defendants under Federal Rule of Civil Procedure 37(b) for violation of the court's discovery orders and under the court's inherent power to sanction misconduct. Union Pump averred that a variety of sanctions were appropriate, including entry of default judgment, an adverse inference instruction, and attorney's fees. Several months later, Union Pump moved for summary judgment with respect to its spoliation claims and again asked the court to enter default judgment against the defendants and award attorney's fees to Union Pump. The district court declined to rule on either motion. Instead, the court decided that "[e]vidence regarding spoliation can be presented to, and the issue will be decided by, the jury. The issue of sanctions shall be addressed by the Court after the jury returns its verdict."

Before trial, Union Pump requested that the court provide an adverse inference instruction to the jury. Specifically, Union Pump asked the court to instruct the jury that the defendants improperly possessed and intentionally destroyed Union Pump's proprietary property. The court did not give the adverse inference instruction requested by Union Pump. Instead, the district court instructed the jury that it "may infer that the evidence destroyed would have been unfavorable to Defendants" if it determined that the evidence was in the control of the defendants, that they had an obligation to preserve it, that the destroyed evidence was relevant to the litigation, and that the evidence was destroyed intentionally and in bad faith.

At trial, the only direct evidence that the defendants ever possessed information belonging to Union Pump was Cleveland's testimony regarding his

6

No. 10-30040
No. 10-30072

possession and later destruction of at least three disks containing drawings belonging to Union Pump. Union Pump also presented considerable circumstantial evidence that the defendants used Union Pump's design drawings, including the fact that CTI was able to bid competitively with Union Pump for jobs that would have required drawings from the American Pump line. According to the Union Pump representative that testified at trial, Union Pump is able to realize very little or no value from the American Pump line of pumps as a result of the missing drawings. At the close of Union Pump's evidence, the district court dismissed Elmore and CTI's insurer, leaving Goodrich, Cleveland, and CTI as the remaining defendants.

Following a two-week trial, the jury returned a verdict in favor of Union Pump in the amount of $2,125,559. The jury found that the defendants had not engaged in unfair trade practices, but that the defendants were liable to Union Pump for violating LUTSA, for conversion of Union Pump's property, and for intentional spoliation of evidence. The jury awarded Union Pump $1,525,559 as the "total amount of compensatory damages required to make [Union Pump] whole." The jury also determined that CTI had been unjustly enriched in the amount of $600,000. In a separate interrogatory, the jury found that the defendants had misappropriated Union Pump's trade secrets in "bad faith."

The district court then asked the parties to brief the issue of whether Union Pump was entitled to attorney's fees. Union Pump asked the district court to award it the entire amount of its attorney's fees and all of its costs, in an amount close to $1 million. Union Pump asserted two bases for the award of attorney's fees: LUTSA and the court's inherent powers to sanction the defendants' for their bad faith misappropriation of trade secrets. Union Pump did not re-assert its request for sanctions related to the defendants' spoliation

7

No. 10-30040
No. 10-30072

of evidence. The district court declined to award attorney's fees, finding that "the jury provided [Union Pump] adequate compensation in their award."

Union Pump appeals the district court's decision not to award attorney's fees. CTI also appeals, arguing that the district court made several evidentiary errors and that there is insufficient evidence to sustain the amount of the damages award. We consolidated the appeals.

## II.  DISCUSSION

### A.    Attorney's Fees

Union Pump appeals the district court's denial of its motion for attorney's fees. According to Union Pump, the district court erred when it declined to use its inherent powers to award attorney's fees in light of the jury's finding that the defendants spoliated evidence.[2] We review a district court's award of attorney's fees (or failure to do so) under its inherent powers for an abuse of discretion. *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

Union Pump argues that the district court should have used its inherent powers to award attorney's fees in response to the defendants' spoliation of evidence.[3]  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).  In

---

[2] During trial, Union Pump asked that it be permitted to present evidence of its attorney's fees as the damages for its spoliation claim. The district court denied the motion, stating that it would address the issue of attorney's fees after trial. Union Pump clarified during oral argument that it does not ask us to reverse this ruling and remand to allow it to submit damages to a jury for the spoliation claim. Therefore, we do not address whether the district court should have permitted Union Pump to submit its attorney's fees to the jury as an element of damages.

[3] Union Pump argued to the district court, and appeared to argue in its opening brief to this court, that it was entitled to attorney's fees under LUTSA for the defendants' misappropriation of trade secrets. During oral argument, however, Union Pump was clear that it seeks attorney's fees relative only to the defendants' conduct in spoliating evidence, which is an act separate and distinct from the misappropriation of trade secrets and for which

No. 10-30040
No. 10-30072

*Chambers*, the Supreme Court held that, in certain circumstances, "federal courts have inherent powers to assess attorney's fees." *Id*. at 45. These inherent powers "ought to be exercised with great caution," *id*. at 43 (quotation omitted), and are reserved for "conduct which abuses the judicial process," *id*. at 44–45. "The threshold for the use of the inherent power sanctions is high." *Natural Gas Pipeline*, 86 F.3d at 467. A court's inherent powers to sanction "may be exercised only if essential to preserve the authority of the court," *id*., and only when the court "finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled,' " *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995) (quoting *Chambers*, 501 U.S. at 46). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

Spoliation of evidence is among the offenses for which a court may assess sanctions using its inherent powers. *See Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 449 (4th Cir. 2004) ("The imposition of a sanction . . . for spoliation of evidence is an inherent power of federal courts."). Union Pump complains that the defendants engaged in the following acts of spoliation: (1) Cleveland, after conferring with Goodrich, destroyed at least three computer disks containing information belonging to Union Pump; (2) the defendants disposed of a computer alleged to contain information belonging to Union Pump; (3) the defendants failed to ensure that the tapes used to back up their computer server were properly working; (4) the defendants destroyed information on the backup tapes;

---

LUTSA could not serve as a basis for an award of attorney's fees.

Nor does Union Pump argue to this court, as it did in its pre-trial motions to the district court, that it is entitled to attorney's fees as a sanction under Federal Rule of Civil Procedure 37(b) for the defendants' discovery violations. We therefore do not consider whether the district court abused its discretion in failing to assess sanctions under Rule 37(b).

No. 10-30040
No. 10-30072

(5) the defendants failed to institute a "litigation hold" to ensure that relevant evidence would not be destroyed or deleted; and (6) the defendants used disk-wiping software to delete and destroy information on their computer hard drives after the district court's entry of a protective order, and, in the case of one computer, the disk-wiping occurred just days before turning the computers over to the court-appointed expert for forensic imaging.

There can be no dispute that these are serious charges, which, if true, would constitute particularly deplorable conduct on the part of the defendants that would justify the imposition of sanctions. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (approving dismissal of suit and award of attorney's fees as a sanction for plaintiff's intentional deletion of electronic information); *Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462, 466 (W.D. Tex. 2006) (entering default judgment against a defendant that used disk-wiping software to destroy electronic information). In this case, however, the district court chose not to award attorney's fees as a sanction for the defendants' conduct, and we are reluctant to disturb that ruling.

A court's inherent power to sanction "is not a broad reservoir of power, ready at an imperial hand, but a limited source." *FDIC v. MAXXAM, Inc.*, 523 F.3d 566, 591 (5th Cir. 2008) (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990), *aff'd sub nom. Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). We therefore do not believe that the district court abused its discretion in failing to award attorney's fees in this case. One of the most powerful, and perhaps the most common, remedies for spoliation is an adverse inference instruction given to the jury. The district court instructed the jury that if it found that the defendants intentionally destroyed relevant evidence in bad faith, the jury could "infer that such evidence was unfavorable

to [the defendants]."[4] Given that the jury ultimately found the defendants liable, we do not fault the district court for limiting its sanction to the adverse inference instruction due to the requirement that the court, in remedying offensive conduct through sanctions, must "try the less restrictive measure first." *Natural Gas Pipeline*, 86 F.3d at 467.

We are also mindful that Union Pump failed to renew after trial its request for attorney's fees as a sanction for spoliation. Union Pump filed two motions before trial requesting, *inter alia*, attorney's fees as a sanction for the defendants' spoliation of evidence. Because it had deferred ruling on Union Pump's pre-trial motions for attorney's fees, the district court, immediately following the jury's verdict, requested that each party submit a brief "on whether or not [Union Pump is] entitled to attorney's fees under the verdict." In its post-trial brief, Union Pump requested attorney's fees under LUTSA and under the court's inherent power. Union Pump's request for attorney's fees under the court's inherent power was not, however, related to the defendants' spoliation of evidence. Rather, Union Pump argued that because the jury had found that the defendants had misappropriated its trade secrets in bad faith, the district court should sanction the defendants for that conduct. Union Pump did not ask the district court to impose sanctions for bad faith spoliation of evidence in its brief. Indeed, nowhere in Union Pump's post-trial motion to set attorney's fees or the accompanying briefs does the word "spoliation" even appear.

---

[4] Union Pump argues that the district court did not give an adverse inference instruction or that the adverse inference instruction was too weak. Union Pump is correct that it did not receive the adverse inference instruction that it wanted, but the court's instruction did permit the jury to infer that the destroyed evidence was adverse to the defendants if the jury found the necessary facts. Thus, it was an adverse inference instruction.

No. 10-30040
No. 10-30072

We are not blind to the egregious nature of the defendants' conduct in this case.  Spoliation is a serious offense and a party's intentional destruction of relevant evidence threatens the sanctity and spirit of the judicial process. However, the imposition of sanctions under the court's inherent power is powerful medicine that should be administered with great restraint.  We are unaware of any case from this circuit, or any other circuit, in which an appellate court has directed the imposition of sanctions where the district court has failed to do so.  Here, the district court found that Union Pump had been made whole by the jury's verdict and that the adverse inference in the jury instructions sufficiently remedied the alleged spoliation.  We decline to substitute our judgment for that of the district.  That is not to say an appellate court may never reverse a district court's refusal to award sanctions.  *See AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 620  (7th Cir. 1993) (remanding for "a more plenary explanation" for  the district court's denial of attorney's fees as a discovery sanction under Rule 37 because "the denial of sanctions with no explanation may constitute an abuse of discretion").  In this case, however, given the district court's intimate familiarity with the case and Union Pump's failure to renew its request for sanctions related to spoliation, we do not find that the district court abused its discretion in refusing to award attorney's fees using its inherent powers as a sanction for the defendants' spoliation of evidence.

## B.    Evidentiary Errors

In their appeal, the defendants contend that they are entitled to a new trial because the district court made evidentiary errors with respect to several witnesses.  We address each in turn.

### 1.    *Bixler Testimony*

No. 10-30040
No. 10-30072

The defendants first argue that they are entitled to a new trial because the district court permitted Union Pump's corporate representative, Mike Bixler, to testify to numerous matters that were hearsay and not within his personal knowledge. We review a district court's decision to admit or exclude evidence for an abuse of discretion. *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 265 (5th Cir. 2007). If the district court abused its discretion, "we then apply the harmless error doctrine," and we will affirm the district court unless "a substantial right of the complaining party was affected." *Id.*

The defendants contend that Bixler was improperly permitted to testify to facts that Union Pump learned during a series of internal investigations. Bixler did not conduct the investigations or have any role in them, no written reports were issued as a result of the investigations, and Bixler learned of the facts he testified to solely through conversations with others. Specifically, Bixler testified regarding three computer hard drives that were supposedly sent from the Shreveport plant to Union Pump's Houston location. According to Bixler, another employee, David Linn, discovered at some point that the hard drives were missing from the computers sent to Houston. In addition, Bixler testified regarding Union Pump's investigation into how CTI was able to competitively bid and "steal" work away from Union Pump for a specific client, Mid-Valley Pipeline Company. The district court overruled the defendants' objection to this testimony, stating that "the objection goes to the weight that [the jury] may choose or not choose to give to the witness's statements in this area." The defendants argue on appeal that Bixler's testimony regarding the facts that he learned through other people at the company was improperly admitted.

Federal Rule of Evidence 602 limits the scope of a witness's testimony to matters that are within his or her personal knowledge. Union Pump argues that

13

No. 10-30040
No. 10-30072

Bixler was permitted to testify to matters that, although they were not within his own personal knowledge, were within the knowledge of the corporation because Bixler was designated as Union Pump's corporate representative. We disagree. Federal Rule of Civil Procedure 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an *adverse* party to use that deposition testimony during trial. *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006). However, a corporate representative may not testify to matters outside his own personal knowledge "to the extent that information [is] hearsay not falling within one of the authorized exceptions." *Id.* at 435; *see also Deutsche Shell Tanker Gesellschaft mbH v. Placid Refining Co.*, 993 F.2d 466, 473 n.29 (5th Cir. 1993) (corporate representative is not permitted to repeat "rank hearsay").

We hold that any error in allowing Bixler to testify to matters that may have been hearsay was harmless. Bixler's testimony that David Linn discovered three missing hard drives in computers that were sent from the Shreveport plant was corroborated by Linn's deposition testimony, which was played for the jury. Further, Union Pump presented plenty of additional evidence that the defendants had misappropriated Union Pump's trade secrets, even absent mention of the missing hard drives. And Union Pump's claims of spoliation related to the defendants' hard drives that were turned over to the court-appointed computer expert, not to the allegedly missing hard drives from the Shreveport plant.

The admission of Bixler's testimony regarding the Mid-Valley investigation was also harmless. The investigation related to drawings that Mid-Valley had obtained for a project that Union Pump had performed for Mid-

14

Valley. The substance of Bixler's testimony was that it was Union Pump's policy never to provide clients with copies of designs, but that Union Pump learned through its investigation that Mid-Valley had somehow obtained design drawings, which allowed CTI to outbid Union Pump. Bixler's testimony was largely repeated by one of Union Pump's salesmen, Danny Hyatt. Hyatt testified that he was assigned to the Mid-Valley project, that he was familiar with the contract negotiations between Union Pump and Mid-Valley, and that during negotiations Union Pump had repeatedly refused Mid-Valley's request for the design drawings. Because the hearsay testimony was largely corroborated by other admissible evidence, we find no reversible error.

### 2. *Yarbrough Testimony*

The defendants next complain that the district court erred in allowing Susan Yarbrough, a former Union Pump employee in the Shreveport plant, to testify on behalf of Union Pump because Union Pump failed to provide the correct address for Yarbrough in its preliminary witness lists. We find no error.

"Questions concerning both the interpretation of pretrial orders and the exclusion of undisclosed witnesses are reviewable only for abuse of discretion." *Keyes v. Lauga*, 635 F.2d 330, 335 (5th Cir. Unit A Jan. 1981). In a series of pre-trial scheduling orders, the district court ordered the parties to provide one another with a list of witnesses. The list was to include each witness's "name, address, and a brief statement of the nature of their expected testimony." In response to each of these orders, the Union Pump provided the defendants with a witness list that included Yarbrough as a "may call" witness and listed her address as being in Shreveport, Louisiana. During the pre-trial conference, the district court ordered the parties to change their "may call" witness lists to "will call" lists at least two weeks before trial and to provide copies to one another and

No. 10-30040
No. 10-30072

to the court.  Union Pump provided its will call witness list to the defendants on May 6, 2009, in compliance with the district court's order.  For the first time, Yarbrough's address correctly appeared as Mobile, Alabama, rather than Shreveport, Louisiana.

The defendants argue that the district court erred in denying its motion to strike Yarbrough as a witness because Union Pump failed to comply with the district court's scheduling order when it provided an incorrect address for Yarbrough.  However, the defendants have failed to demonstrate how they were prejudiced by the incorrect address.  Yarbrough was on Union Pump's "may call" witness list for over a year, but the defendants never made any attempt to contact her for a deposition prior to trial.  In response to the defendants' objection regarding the discrepancy, the district court allowed the defendants to depose Yarbrough by phone before she testified, even though the deadline for discovery had long passed.  The defendants can hardly claim that Yarbrough was an unexpected "surprise" witness.  Therefore, we hold that the district court did not abuse its discretion in allowing Yarbrough to testify.

*3.     Attaway's Testimony*

Finally, the defendants argue that the district court improperly limited the scope of the testimony offered by its expert, D. Wesley Attaway.   We review a district court's decision to admit or exclude expert testimony for abuse of discretion. *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010).

A substantial issue at trial was whether the defendants had, in fact, deleted or destroyed electronic information belonging to or related to Union Pump.   The defendants retained Attaway to examine their hard drives.  Attaway's report detailed his findings regarding the information contained on hard drive 9, but he did not specifically address hard drives 10 and 11.  His

16

report simply stated that "no data relating to plaintiffs has been wiped untimely from defendants' computers."

At trial, Union Pump's expert, Andrew Rosen, testified that hard drives 10 and 11 had been "wiped" using disk-wiping software. After hearing Rosen's testimony during trial, Attaway conducted further analysis of hard drives 10 and 11, which was not contained in any of his reports. When the defendants attempted to question Attaway regarding his additional analysis of hard drives 10 and 11, Union Pump objected, arguing that Attaway was testifying outside the scope of his expert report. Union Pump argued that Attaway should have conducted his examination of hard drives 10 and 11 when he prepared his original report because the information Rosen testified to was contained in Rosen's initial report. Union Pump also contended that it would be prejudiced by the testimony due to its inability to effectively cross examine Attaway's testimony because Rosen had been called away from the trial and was unable to assist Union Pump in evaluating Attaway's testimony. The district court agreed to allow Attaway to render an opinion regarding hard drives 10 and 11, but limited his testimony on the subject to a single question. The question was asked by the district court: "Mr. Attaway, were any files relevant to the plaintiff in Hard Drives 10 or 11?" Attaway responded, "No." On appeal, CTI argues that the district court erred by improperly limiting the scope of Attaway's testimony regarding hard drives 10 and 11.

We do not find that the district court abused its discretion in limiting Attaway's testimony. Federal Rule of Civil Procedure 26(a)(2) provides that parties must disclose any expert opinions they intend to offer at trial, and Rule 26(e)(2) provides parties with an ongoing duty to supplement expert reports. Despite the defendants' assertions to the contrary, Rosen's report clearly

contained opinions regarding hard drives 10 and 11, and Rosen's testimony at trial regarding hard drives 10 and 11 did not materially vary from or exceed his expert report. The defendants and their expert were therefore well aware of Rosen's opinions regarding the hard drives, which were provided to them nearly two years before the trial began. The defendants cannot make an end run around the disclosure rules by claiming that Attaway's untimely investigation was conducted in response to Rosen's trial testimony when Rosen testified to exactly the information contained in his initial report.

Further, the defendants have not demonstrated that the district court's failure to permit Attaway's testimony on this point was so prejudicial as to require us to overturn the jury's verdict. The defendants argue that Attaway would have provided "critical" testimony that the wiped material was readily identifiable and did not relate to Union Pump. However, the district court allowed Attaway to relay that pertinent fact in the question that Attaway was permitted to answer. Attaway was therefore able to convey to the jury precisely the information that the defendants allege was improperly excluded.

## C.    Damages

The defendants also contest the amount of the compensatory damages awarded by the jury.[5] We "tread[] lightly upon jury verdicts, as the standard of review is very deferential." *Vogler v. Blackmore*, 352 F.3d 150, 154 (5th Cir. 2003). We will sustain the amount of damages awarded by the fact finder "unless the amount is clearly erroneous or so gross or inadequate as to be contrary to right reason." *Id.* "If the award of damages is plausible in light of the record, a reviewing court should not reverse the award even if it might have

---

[5] The defendants contest only the compensatory damages awarded by the jury and make no argument regarding the unjust enrichment portion of the damages award.

come to a different conclusion." *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 843 (5th Cir. 2004).

The damages award here was clearly substantiated by the evidence presented at trial. The jury awarded Union Pump $1,525,559 as "the total amount of compensatory damages required to make Plaintiff whole." This number was taken directly from the report submitted by one of Union Pump's experts, Holly Sharp. According to Sharp, the inflation-adjusted amount that Union Pump had paid for American Pump's goodwill was $1,525,559 as of August 2008, when she prepared her expert report. By the time of trial, in June 2009, the inflation-adjusted value was $1,541,919. Sharp's estimate was not an implausible measure of Union Pump's damages, and the jury's use of her estimate was not unwarranted, because a Union Pump representative testified that the American Pump line had no remaining value to Union Pump without the design drawings required to service and repair the pumps.

The defendants argue that there was insufficient evidence to sustain the damage award because the jury "failed to consider [Sharp's] explanatory testimony." We construe this argument as a criticism of the district court's decision not to send to the jury the transcript of Sharp's testimony. During deliberations, the jury asked to see any "financial evidence" and the "financial reports" prepared by Sharp and Keith Bucher, Union Pump's former controller. Union Pump asked the district court to send the transcript of Sharp's testimony along with the exhibit containing Sharp's report. The defendants did not join this request or object when the district court denied Union Pump's motion. Given that the jury itself did not request the transcript and the defendants did not preserve the issue for appeal, we find no merit in this argument. Thus, the jury's award of $1,525,559 is certainly plausible in light of the record.

No. 10-30040
No. 10-30072

## III.   CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.